## FISKE H. VENTRES ET AL. *v.* TOWN OF FARMINGTON
## (11754)

PETERS, HEALEY, SHEA, GRILLO and BIELUCH, Js.

Argued February 8—decision released April 10, 1984.

The appellant filed a motion for reargument which was denied.

*Fiske H. Ventres,* pro se, the appellant (named plaintiff).

*Justin J. Donnelly, Sr.,* with whom, on the brief, were *Jay B. Weintraub* and *Celia J. Donnelly,* for the appellee (defendant).

GRILLO, J. The plaintiff, Fiske H. Ventres, is a land developer who owns approximately 365 acres of land

wholly located in Burlington on Taine Mountain, which mountain lies partly in the towns of Burlington and Farmington.[1] This property abuts a public highway in Burlington known as Taine Mountain Road. When the plaintiff attempted in 1980 to widen and grade an extension of Taine Mountain Road located in Farmington to the Burlington town line the defendant, town of Farmington, erected barricades to prevent the plaintiff from continuing these improvements. The plaintiff brought an action seeking injunctive relief and damages. The court held for the defendant, stating that the extension of Taine Mountain Road in Farmington was not a public highway and that the defendant's barricades did not deny him access to his property since he was not entitled to a right of access along the discontinued extension of Taine Mountain Road in Farmington. The plaintiff appeals to this court claiming, inter alia, that the court's conclusions as to the legal status of Taine Mountain Road and the defendant's possessory rights in the discontinued road are clearly erroneous in light of evidence presented at trial.

The following facts form the basis of this appeal: The Ventres property is an irregular tract of land in Burlington, separated from the Farmington-Burlington town line by other property. Taine Mountain Road is a "woods road or mountain trial" connecting River Road, a public highway in Farmington, to Punch Brook Road, a public highway in Burlington, a distance of about two miles. This road traverses land in Farmington four rods wide which was reserved by the town "for a highway" when a Farmington town highway committee conveyed a thirty rod strip of land to an abutting owner in 1787. No formal layout of a town road

---

[1] The plaintiff Rena S. Page was the original owner of this land. She sold the property to the plaintiff Ventres on April 15, 1982, and claims no further interest in this action. Thus, the term "plaintiff" will hereinafter refer to Ventres only.

over the reserved land, however, appears in any town records or in map collections dating from the mid-1700's. While lines on various maps presented at trial indicate some sort of passageway, there is no proof that any portion of Taine Mountain Road in Farmington was a public highway until 1947. As houses began to be built along the reserved strip of land, the town graded and maintained a portion of the dirt road from River Road to the town line. In November of 1950, the Farmington town council held a public hearing on the discontinuance of several roads, including a portion of Taine Mountain Road, then described as 960 feet long. Because of objections, no further action was taken at that time to discontinue any portion of the road.

By 1955, new street lines were established, and Taine Mountain Road was paved by the defendant from River Road to a point approximately 100 feet from the town line, where a circular cul-de-sac was established. Only a narrow dirt path extended from the cul-de-sac to the town line; it is this narrow strip of land which is the subject of this action. The plaintiff viewed the road described above and was aware of its condition before he obtained an option to purchase the Page property in 1975.

Prior to exercising his option to purchase the property, the plaintiff began to bulldoze the area in Farmington from the paved road to the town line. He was stopped in his work at the town line in September, 1978, when the defendant dumped gravel and fill across the road. Thereafter, at a meeting on November 29, 1978, the town council voted to call a town meeting on a resolution to discontinue Taine Mountain Road from the cul-de-sac to the town line. At a town meeting held on December 12, 1978, such resolution was passed by a show of hands, and the discontinuance of this 100 foot strip of land was formally approved by the town council on December 26, 1978.

In 1980, the plaintiff proceeded once again to widen the road between the cul-de-sac and the town line from its existing narrow path to a width of about forty-five feet. Farmington residents protested because several trees were destroyed in the process. The plaintiff's explanation of his action was, on the one hand, that he was improving a public highway and, on the other hand, that he thought that the town had discontinued that unpaved portion of the road and that he had the permission of the abutters to grade the area. No abutter's testimony was introduced at trial to support this claim. The town of Farmington then installed concrete barricades across the road at the town line, and the plaintiff brought an action for injunctive relief and damages. The trial court denied the requested relief, holding that the subject road was not a public highway, and, because the plaintiff had access to his land from other public roads, he could not complain of inconvenience or necessity due to lack of access. The plaintiff herein appeals the trial court's decision.

In his first claim of error, the plaintiff disputes the finding of the trial court that the unpaved portion of the road from the cul-de-sac to the town line was not a public highway. The plaintiff argues that a public highway was created by the 1787 deed which reserved to the defendant the four rod strip of land "for a highway." Therefore, dedication and acceptance of the road were not necessary to establish its legal status. We disagree.

"From early times, under the common law, highways have been established in this state by dedication and acceptance by the public." *Wamphassuc Pt. Prop. Owners Assn.* v. *Public Utilities Commission,* 154 Conn. 674, 680, 228 A.2d 513 (1967). The essential elements to be proved are the owner's unequivocal intention to dedicate the way to public use, and a general use by the public over a period long enough to indicate

that it is acting on the basis of a claimed public right resulting from the owner's dedication. *Lynch* v. *West Hartford,* 167 Conn. 67, 78, 355 A.2d 42 (1974). Since both of these issues are questions of fact; *Johnson* v. *Watertown,* 131 Conn. 84, 90, 38 A.2d 1 (1944); our function is limited to determining whether the decision of the trial court was clearly erroneous. Practice Book § 3060D; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980).

It is clear that the facts found could not support a conclusion that the disputed unpaved portion of Taine Mountain Road was accepted by the public through actual use. The record shows that only that portion of Taine Mountain Road from River Road to the cul-de-sac became a public highway in 1947. The remaining portion at issue in this case, which extended from the cul-de-sac to the town line, remained a steep, narrow, dirt road which was used occasionally by hikers. The trial court found "no evidence of any use of the way beyond the town line except by hikers, horseback riders, and a few experiments to traverse it by specially equipped motorbike[s] . . . From the 1955 [cul-de-sac] to the town line, the area appears to have remained as its original passway or trail until the town acted to discontinue passage by formal action in December 1978."[2] While it is true that actual use need not be constant or by large numbers of the public; *Meshberg* v. *Bridgeport City Trust Co.,* 180 Conn. 274, 282, 429 A.2d 865 (1980); *Phillips* v. *Stamford,* 81 Conn. 408, 414, 71 A. 361 (1908); it can hardly be said that the very slight use made of the "paper road," coupled with the fact that this portion of the passway was not paved or

[2] We note that this act of the town in discontinuing this 100 foot strip might appear to be inconsistent with the assertion that this portion of Taine Mountain Road was not a public highway. At oral argument, however, counsel for the defendant explained that in the face of the plaintiff's assertion that the way was a public highway, the town decided to dispel any possible doubt by employing the formal discontinuance procedure.

maintained, constituted acceptance by the public. See *Meshberg* v. *Bridgeport City Trust Co.*, supra, 282–83. We cannot find clearly erroneous the trial court's conclusion that the disputed portion of Taine Mountain Road did not become a public highway through public use and acceptance of the roadway.

Since the disputed way was not a public highway at any time since 1787, a public easement in this passage was never created. See *Luf* v. *Southbury,* 188 Conn. 336, 449 A.2d 1001 (1982); *Peck* v. *Smith,* 1 Conn. 103 (1814). Had this road been accepted and dedicated as a public highway, the plaintiff would have had the right to enter lawfully upon the land to make repairs or improvements *under the authority of local highway officials* in the exercise of a right incident to the public easement of passage. See *Arborio* v. *Hartford Electric Light Co.,* 130 Conn. 592, 597, 36 A.2d 384 (1944). However, since the land was not a public highway, he can claim no such right to make improvements. Furthermore, the plaintiff has no possessory interest in the 100 foot strip of land; he entered the area for his own purposes without lawful authority or invitation of the abutters. Therefore, the trial court correctly found that the plaintiff had no standing to complain of trespass by the town on this strip of land since title and possession are essential to such a claim. *Wadsworth Realty Co.* v. *Sundberg,* 165 Conn. 457, 461, 338 A.2d 470 (1973). Accordingly, the plaintiff's claims were properly denied.[3]

---

[3] In their briefs and during oral argument, both parties argue extensively on the issue of the town's rights to the land in dispute after the 1787 conveyance and after the discontinuance in 1978. They both cite the same cases for the identical propositions of law, but then disagree as to their application in this particular case. Both parties cite the line of cases beginning with *Peck* v. *Smith,* 1 Conn. 103 (1814), and continuing to *Luf* v. *Southbury,* 188 Conn. 336, 449 A.2d 1001 (1982). Essentially, these cases hold that the taking of a highway creates no interest in fee, the presumption being that the landowners whose lands abut the highway continue to be owners of the soil to the middle of the highway. *Luf* v. *Southbury,* supra, 341; *Peck*

The plaintiff's final claim that the discontinuance of the 100 foot strip of land as a highway triggered relief under General Statutes § 13a-55 is similarly without merit. This statute provides in pertinent part: "Property owners bounding a discontinued or abandoned highway shall continue to have a right-of-way over it to the nearest or most accessible highway . . . ." The plaintiff argues that the defendant has interfered with his "reasonable access" to the easterly system of highways in Farmington and Hartford since the discontinu-

v. *Smith*, supra, 110. Rather, the taking of a highway creates a public easement of travel allowing the public to pass over the highway at will. *Peck* v. *Smith*, supra, 110; *Luf* v. *Southbury*, supra, 341.

The defendant town maintains that these cases are inapplicable due to the unique facts presented by this case in which the defendant did not "take" land for a highway from other original owners. It claims a fee interest in the whole thirty rods as the original owner, by virtue of having reserved a fee interest in the four rod strip of land in the 1787 deed which conveyed the remainder of the thirty rods to an adjoining landowner. The town retained the fee; no easement was created. The plaintiff, however, argues that the 1787 deed accomplished the same result as if the town had conveyed the property without a reservation, and then had taken, in a separate action, an easement for the four rod highway. Therefore, relying on the cases of *Peck* v. *Smith*, supra, through *Luf* v. *Southbury*, supra, the plaintiff contends that the town had merely an easement in the highway after the 1787 conveyance.

Both parties agree that when a highway is discontinued, the original owner once again holds the land discharged of the public easement. See *Antenucci* v. *Hartford Roman Catholic Diocesan Corporation*, 142 Conn. 349, 356, 114 A.2d 216 (1955); *Benham* v. *Potter*, 52 Conn. 248, 252 (1884). The defendant argues that since the town was the original owner in fee of the whole thirty rods, the town remained the fee owner after discontinuance. The plaintiff, however, maintains that in the 1787 deed the town reserved only an easement in the four rods, and that accordingly the abutting landowners were the only parties with an interest in this land after discontinuance of the 100 feet. The town, therefore, had no right to barricade property in which it had no interest.

A review of the trial court's decision reveals that no finding was made as to whether the town held a fee interest or an easement in the four rod strip of land after the 1787 deed or after the discontinuance in 1978. However, we conclude that such a finding was not necessary to a proper disposition of this case since the plaintiff was in no position to assert whatever rights the abutters may have possessed.

670

ance placed the plaintiff's property on a cul-de-sac, and that the resulting four miles of further travel for access to his property from the east is wholly unreasonable.

The trial court correctly found that § 13a-55 has no application to the evidence presented in this case since the plaintiff's property does not abut the discontinued segment of road. The evidence at trial reveals that the plaintiff's property is in another town, 1950 feet from the Burlington-Farmington town line with free access to other roads. There is no claim that the plaintiff's property is now landlocked. Furthermore, the plaintiff remains in the same position that he occupied at the time he obtained the option to purchase his property, since he knew then that the Burlington portion of Taine Mountain Road was on a cul-de-sac with direct access to Punch Brook Road in Burlington.

"The vacation of a part of a street does not ordinarily permit a recovery to an owner fronting on another part of this street. And this is true, even though it result in some inconvenience to his access . . . ." *Park City Yacht Club* v. *Bridgeport,* 85 Conn. 366, 372, 82 A. 1035 (1912); see also *Cone* v. *Waterford,* 158 Conn. 276, 279, 259 A.2d 615 (1969). "A landowner who, as a result of governmental action, suffers a total and permanent loss of his right of access to the public way adjacent to his land and to the system of public roads is entitled to recover damages." *Luf* v. *Southbury,* supra, 342. Since the plaintiff in this case does not own property abutting on the discontinued way and still has access to the public road system, his claim under § 13a-55 was properly denied.

There is no error.

In this opinion the other judges concurred.